891 A.2d 312

**STATE of Maryland**

v.

**Charles Lee PITT.**

**No. 99, Sept. Term, 2003.**

Court of Appeals of Maryland.

Feb. 1, 2006.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for petitioner.

Mark Colvin, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, GREENE, JOHN C. ELDRIDGE (retired, specially assigned), JJ.

BELL, C.J.

The plea agreement plays a crucial role in the administration of both this State's and the nation's criminal justice system. *State v. Brockman,* 277 Md. 687, 692–693, 357 A.2d 376 (1976). Indeed, courts have stated that plea agreements "eliminate many of the risks, uncertainties and practical burdens of trial, permit the judiciary and prosecution to concentrate their resources on those cases in which they are most needed, and further law enforcement by permitting the State to exchange leniency for information and assistance." *Id.* at 693, 357 A.2d at 381. *See also Brady v. United States,* 397

U.S. 742, 752, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747, 758 (1970), *People v. Selikoff*, 35 N.Y.2d 227, 360 N.Y.S.2d 623, 318 N.E.2d 784 (N.Y.1974), *cert. denied*, 419 U.S. 1122, 95 S.Ct. 806, 42 L.Ed.2d 822 (1975). Therefore, this Court has held that "plea bargains, when properly utilized, aid in the administration of justice and, within reason, should be encouraged." *Id.* at 693, 357 A.2d 376, 357 A.2d at 381. Plea agreements account for the disposition of an overwhelming percentage of all criminal cases. *See* J. Bond, Plea Bargaining and Guilty Pleas §§ 1.02, 1.03, 1.07(2) (1975), A. Alschuler, Implementing the Criminal Defendant's Right to Trial: Alternatives to the Plea Bargaining System, 50 U. Chi. L.Rev. 931 (Summer 1983) (commenting that in some jurisdictions where plea bargaining has been prohibited, guilty pleas still account for a high percentage of felony convictions), S. Creaton, Plea Agreements: Progressing the Fight Against Crime or Bribing Witnesses?, 5 Suffolk J. Trial & App. Advoc. 37 (2000) (stating that plea bargains continue to increase in usage, accounting for an overwhelming percentage of guilty pleas in criminal cases), B. Kleinhaus, Two Masters: Evaluating Criminal or Civil Nature of the VWPA and MVRA Through the Lens of the Ex Post Facto Clause, The Abatement Doctrine, and the Sixth Amendment, 73 Fordham L.Rev. 2711 (May 2005) (stating that ninety-six percent of all federal criminal convictions result from a plea agreement by the defendant); *see also State v. Rodriguez*, 125 Md.App. 428, 446, 725 A.2d 635, 644 (1999). Plea bargains aid the system because the number of cases that go to trial are reduced, thus, preventing the courts from becoming flooded and overcrowded. *See Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427, 432 (1971) ("If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities").

In Maryland, Md. Rule 4–243 prescribes the procedures to be followed and the conditions to be observed regarding plea agreements. Section (a) of that Rule, as relevant, provides:

"(a) Conditions for Agreement.

"(1) Terms. The defendant may enter into an agreement with the State's Attorney for a plea of guilty or nolo contendere on any proper condition, including one or more of the following:

"(A) That the State's Attorney will amend the charging document to charge a specified offense or add a specified offense, or will file a new charging document;

"(B) That the State's Attorney will enter a nolle prosequi pursuant to Rule 4–247(a) or move to mark certain charges against the defendant stet on the docket pursuant to Rule 4–248(a);

"(C) That the State's Attorney will agree to the entry of a judgment of acquittal on certain charges pending against the defendant;

"(D) That the State will not charge the defendant with the commission of certain other offenses;

"(E) That the State's Attorney will recommend, not oppose, or make no comment to the court with respect to a particular sentence, disposition, or other judicial action;

"(F) That the parties will submit a plea agreement proposing a particular sentence, disposition, or other judicial action to a judge for consideration pursuant to section (c) of this Rule."

Section (c) addresses the effect of a plea agreement and, in some circumstances, its disposition. It provides:

"(c) Agreements of Sentence, Disposition, or Other Judicial Action.

"(1) Presentation to the Court. If a plea agreement has been reached pursuant to subsection (a)(1)(F) of this Rule for a plea of guilty or nolo contendere which contemplates a particular sentence, disposition, or other judicial action, the defense counsel and the State's Attorney shall advise the judge of the terms of the agreement when the defendant pleads. The judge may then accept or reject the plea and, if accepted, may approve the agreement or defer decision as to its approval or rejection until after

such pre-sentence proceedings and investigation as the judge directs.

"(2) Not Binding on the Court. The agreement of the State's Attorney relating to a particular sentence, disposition, or other judicial action is not binding on the court unless the judge to whom the agreement is presented approves it.

"(3) Approval of Plea Agreement. If the plea agreement is approved, the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement.

"(4) Rejection of Plea Agreement. If the plea agreement is rejected, the judge shall inform the parties of this fact and advise the defendant (A) that the court is not bound by the plea agreement; (B) that the defendant may withdraw the plea; and (C) that if the defendant persists in the plea of guilty or nolo contendere, the sentence or other disposition of the action may be less favorable than the plea agreement. If the defendant persists in the plea, the court may accept the plea of guilty only pursuant to Rule 4–242(c) and the plea of nolo contendere only pursuant to Rule 4–242(d).

"(5) Withdrawal of Plea. If the defendant withdraws the plea and pleads not guilty, then upon the objection of the defendant or the State made at that time, the judge to whom the agreement was presented may not preside at a subsequent court trial of the defendant on any charges involved in the rejected plea agreement."

It is well settled in Maryland that "plea agreements are at times entitled to judicial enforcement." *Brockman*, 277 Md. at 694, 357 A.2d at 381. *See Tweedy v. State*, 380 Md. 475, 488, 845 A.2d 1215, 1222 (2004) (holding that where the defendant has not received the benefit of a plea bargain to which he is entitled, the defendant ordinarily may elect to have the bargain specifically enforced or withdraw the guilty

plea), *Jackson v. State,* 120 Md.App. 113, 133, 706 A.2d 156, 166 (1998) (holding that enforcing pleas maintains the interest of the courts in sustaining the credibility of the plea bargaining process and the indispensable role that it plays in the management of an otherwise overwhelming caseload). In fact, our cases, and those of the Court of Special Appeals, make clear that we adhere to, and apply the teachings of, *Santobello,* 404 U.S. at 262, 92 S.Ct. at 499, 30 L.Ed.2d at 433, that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *See, e.g., Miller v. State,* 272 Md. 249, 253–255, 322 A.2d 527 (1974) (holding that when a defendant's guilty plea rests in part on the prosecution's promise not to make any recommendation as to sentencing or disposition, and the State violates its promise, the accused has a remedy, he or she may elect to have the guilty plea vacated or allow it to stand and have the agreement enforced at re-sentencing), *State v. Bittinger,* 314 Md. 96, 101–102, 549 A.2d 10, 12 (1988) (holding that a defendant successful in challenging the plea must realize that the remedy is ordinarily to place the parties in their original position).

The enforceability of the agreement is not the matter at issue in this case; it presents a question involving the admissibility of statements made by the accused during his plea negotiations. Such statements generally are inadmissible. Md. Rule 5–410;[1]

1. Maryland Rule 5–410, "Inadmissibility of Pleas, Plea Discussions, and Related Statements," provides:

"(a) *Generally.* Except as otherwise provided in this Rule, evidence of the following is not admissible against the defendant who made the plea or was a participant in the plea discussions:

"(1) a plea of guilty which was not accepted or which was later withdrawn or vacated;

"(2) a plea of nolo contendere, except as otherwise provided in these rules;

"(3) any statement made in the course of any proceedings under Rule 4–243 or comparable state or federal procedure regarding a plea specified in subsection (a)(1) or (a)(2) of this Rule, except in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath and on the record; or

"(4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of

Fed.R.Evid. 410;[2] *see e.g., Elmer v. State,* 353 Md. 1, 724 A.2d 625 (1999) (discussing the application of Md. Rule 5–410), *see also United States v. Sockwell,* 699 F.2d 213 (5th Cir.1983), *cert. denied* 461 U.S. 936, 103 S.Ct. 2106, 77 L.Ed.2d 311 (1983). There are exceptions, however, one of which this Court has recognized.

In *Wright v. State,* 307 Md. 552, 515 A.2d 1157 (1986), where the plea agreement, which the defendant breached, provided

---

guilty or nolo contendere or which result in a plea of guilty or nolo contendere which was not accepted or was later withdrawn or vacated.

"(b) *Exceptions.*

"(1) A statement of a type specified in subsections (a)(3) or (a)(4) of this Rule is not excluded under this Rule in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered with it;

"(2) A statement of the type specified in subsection (a)(3) of this Rule may be admissible in a subsequent civil proceeding as a prior inconsistent statement, if offered to attack the credibility of the person who made the statement.

"(c) *Definition.* For purposes of this Rule, a guilty plea that is the subject of an appeal from the District Court to the circuit court is not considered withdrawn or vacated."

2. Federal Rule of Evidence 410, "Inadmissibility of Pleas, Plea Discussions, and Related Statements," provides:

"Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

"(1) a plea of guilty which was later withdrawn;

"(2) a plea of nolo contendere;

"(3) any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure regarding either of the foregoing pleas; or

"(4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

"However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel."

that the defendant's inculpatory statements would be used against him in such an event and the government neither rescinded nor breached the agreement, we held those statements were admissible against the defendant. *Id.* at 580, 515 A.2d at 1171. On the other hand, in *Allgood v. State,* 309 Md. 58, 522 A.2d 917 (1987), where the State repudiated the plea agreement, despite recognizing that the State's "repudiation of the plea agreement.... was not improper," *id.* at 71, 522 A.2d at 923, given the defendant's failure to pass a polygraph examination, which the trial court concluded was a part of the agreement, *id.* at 70–71, 522 A.2d at 923, the Court reached the opposite conclusion; we held that the inculpatory statements made by the defendant to a grand jury pursuant to the plea agreement were inadmissible at trial. *Id.* at 82, 522 A.2d at 928. The *Allgood* plea agreement did not contain the provision that was in the plea agreement at issue in *Wright,* specifying that, in the event of breach, the inculpatory statements could be used against him at trial. The plea agreement *sub judice* does. Consequently, we must resolve the proper balance when the defendant breaches the plea agreement and the State, in response, rescinds the agreement.

### A.

Charles Pitt ("Pitt"), the respondent, was arrested on an arrest warrant, prior to the search of his residence pursuant to a search and seizure warrant, issued in connection with the investigation of a burglary of a Joppa, Maryland home. At his initiation and based on his statement that he had "knowledge and information" regarding the Joppa burglary, and his expression of an interest in cutting a deal, a plea agreement was drafted, which, after the respondent was given *Miranda* warnings,[3] was signed by both the respondent and the lead investigating officer and later by the Assistant State's Attorney assigned to the case. Under that agreement, the respondent

---

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

committed "fully and truthfully [to] disclose to the State any and all knowledge and information he may have concerning the investigation [of the Joppa burglary]" and, upon his complete and truthful cooperation, the State agreed to schedule a bond hearing, at which it would recommend personal recognizance for the respondent and, subsequently, to *nol pros* all charges against the respondent arising from the investigation. The agreement also specifically provided that, in the event of the respondent's breach, by knowingly withholding evidence from the State or by being less than completely truthful, the State could "prosecute [the respondent] for any offenses in which the State agreed not to prosecute in exchange for cooperation by [the respondent] with the investigation." It also permitted the State to "use against [the respondent] in all prosecutions the information and documents that he has disclosed to the State during the course of his cooperation."

After the plea agreement was executed, the respondent provided the State with information implicating an acquaintance, Jerome Bagley ("Bagley"), whom he indicated purchased a cellular phone, using a checkbook stolen in the burglary, and had a gold watch from the burglary hanging from the rear view mirror of his automobile. He also informed the State that Bagley had purchased other items with the stolen checks and pawned jewelry, the origin of which he claimed not to have known. Additionally, he accompanied the police to Bagley's home, where a sketch of the watch hanging from the rear view mirror was made, and identified by the victims. With this information and corroboration of some of it, the police obtained and executed an arrest warrant for Bagley and a search & seizure warrant for his home.

After Bagley was questioned, the lead investigator became concerned that the respondent "may not have told us everything as he was required to do by the agreement. He may have knowledge concerning where the property was and additional information concerning the burglary." When the respondent was confronted with this concern and requested to

submit to a polygraph test,[4] the respondent immediately acknowledged that he had not disclosed everything. Moreover, he admitted committing the burglary, with an accomplice. Nevertheless, the respondent stated that "he wanted to keep his earlier deal," adding that "he knew more information, but he was going to hold back and he wanted us to honor this deal."

Having been informed of the foregoing, the Assistant State's Attorney considered the appellant's contract "null and void due to him not completely disclosing the information." That conclusion was communicated to the respondent by the lead investigating officer, who informed him that the agreement had been terminated.

All of the respondent's statements to the police with respect to the burglary investigation were admitted at his trial and he was subsequently convicted of first degree burglary, theft over $ 500, and malicious destruction of property. The respondent noted an appeal to the Court of Special Appeals, which reversed the judgments of the Circuit Court for Harford County. *Pitt v. State,* 152 Md.App. 442, 832 A.2d 267 (2003). The intermediate appellate court concluded that, although inducements in the context of plea agreements are proper, "when the State rescinded the plea agreement, statements obtained under it immediately lost their voluntary status and became inadmissible at trial." *Id.* at 458, 832 A.2d at 277. It relied largely on *Wright* and *Allgood.*

We granted the State's Petition for Writ of Certiorari in order to address, and clarify, the admissibility of statements made during plea negotiations when the plea agreement contains a provision making such statements admissible at trial in the event of breach. *State v. Pitt,* 378 Md. 617, 837 A.2d 928 (2003). We shall affirm the judgment of the intermediate appellate court.

---

4. Another provision of the plea agreement required that the respondent submit to a polygraph examination.

### B.

The State claims that neither *Wright* nor *Allgood* are directly on point and, thus, are wholly inapplicable. Indeed, it says, they are factually distinguishable from the case *sub judice*—in *Wright*, the defendant rescinded the agreement, here, it was the State; in *Allgood*, the plea agreement did not contain the clause present in *Wright*, permitting the state to use the inculpatory statements made pursuant to the agreement in the event of breach, in this case, it does. Consequently, the State submits, neither *Wright* nor *Allgood* or their combination requires the result reached by the Court of Special Appeals. The State further argues that the pertinent inquiry in resolving the issue of the admissibility of statements made during plea negotiations or in reliance on a plea agreement should be which party breached, rather than which party rescinded, the agreement. Using that approach, because the respondent breached the plea agreement, the State maintains, the statements are admissible. It submits, moreover, that, even if rescission is determined to be the pertinent inquiry, the respondent, by agreeing to the use of his inculpatory statements against him in the event that he breached the agreement, waived any protection pursuant to the plea agreement.

The respondent rejoins that *Wright* and *Allgood* are dispositive of this case. Therefore, he urges, because the State rescinded the plea agreement, his statements were inadmissible in the State's case-in-chief, and, therefore, the trial court's denial of his motion to suppress was improper.

The starting point of our analysis is *Wright* and *Allgood.*

In *Wright v. State*, the Court of Appeals held that when a defendant reneges on a plea agreement and the plea agreement provides for the use, by the State, against the defendant, of inculpatory statements in that event, statements he made when negotiating and performing the plea agreement were admissible against him at trial, the State having neither rescinded nor breached the agreement. 307 Md. at 584–585, 515 A.2d at 1173–1174. Kenneth Coley ("Coley"), one of three co-defendants charged with felony murder, premeditated first

degree murder, and attempted robbery, had entered into a plea agreement with the State, pursuant to which he agreed to give a full statement and testify both before a grand jury and at trial in exchange for the State's promise to accept a guilty plea to second degree murder. He made inculpatory statements concerning his role in the charged crimes. The plea agreement explicitly stated that if Coley broke his promise and breached the plea agreement, the State could use any and all of his statements against him at trial. Coley reneged and rescinded the agreement by pleading not guilty and choosing to stand trial. He moved to suppress all the inculpatory statements he had made, arguing that they were involuntary. Although acknowledging that he had been given *Miranda* warnings, Coley maintained that his plea was induced by the State's promise to accept a second degree murder plea. 307 Md. at 579, 515 A.2d at 1171. Thus, he argued, relying on the rule in *Hillard v. State,* 286 Md. 145, 406 A.2d 415 (1979),[5] his

---

5. In *Hillard,* this Court held that promises of help or other advantages rendered a confession inadmissible. 286 Md. at 153, 406 A.2d at 420. Other cases have demonstrated this point. *See Stokes v. State,* 289 Md. 155, 423 A.2d 552 (1980) (holding inadmissible inculpatory statements resulting from a promise made by police that defendant's wife would not be arrested if defendant produced drug evidence, and rejecting the State's argument that benefit to a family member was not the type of advantage contemplated in *Hillard* ); *Nicholson v. State,* 38 Md. 140 (1873) (excluding statements made by defendant as a result of police threat that defendant confess first to avoid harm resulting from co-defendants confession); *Biscoe v. State,* 67 Md. 6, 8 A. 571 (1887) (holding inadmissible statement procured under a hope of favor); *Watts v. State,* 99 Md. 30, 57 A. 542 (1904) (holding inadmissible confession that was induced by newspaper reporter); *Dobbs v. State,* 148 Md. 34, 129 A. 275 (1925) (applying the inducement rule to the conduct of the State's Attorney, who told the defendant, " 'Tell the truth about it. You've got nothing to fear if you tell the truth, and you weren't in it' "); *Lubinski v. State,* 180 Md. 1, 22 A.2d 455 (1941) (holding inadmissible a confession obtained by a police officer who told defendant that an admission was not necessary but certainly favorable); *Streams v. State,* 238 Md. 278, 208 A.2d 614 (1965) (holding involuntary statements obtained by police officer who promised probation if defendant cooperated and longer sentence if he did not cooperate); *Kier v. State,* 213 Md. 556, 132 A.2d 494 (1957) (holding inadmissible statements made by defendant while under medical examination, where doctor offered to stop the examination if defendant confessed); *Edwards v. State,* 194 Md. 387, 71 A.2d 487 (1950) (holding inadmissible confession resulting from

statements made in reliance on the rescinded plea agreement were rendered inadmissible as a result of this inducement. Rejecting these contentions, the trial court denied the suppression motion and the statements were admitted at trial.

This Court recognized that the circumstances surrounding Coley's plea agreement negotiation were different from those surrounding the defendant's confession in *Hillard:*

> "Under the principle applied in the [*Hillard* ], if the [State] had simply told Coley that a confession and guilty plea to second degree murder would result in his not being prosecuted for first degree murder, and if Coley had confessed because of that inducement, his confession would be deemed involuntary and inadmissible at his trial. The instant case, however, involves something quite different ... Here, the inducement by the State took the form of promises under a negotiated plea bargain agreement, made in exchange for Coley's promises under that agreement. The agreement was sanctioned and regulated by Maryland Rule 4–243. The mutual promises were specifically authorized by Rule 4–243. The State neither rescinded nor breached the agreement. Finally, the agreement specified that if Coley reneged, his inculpatory statements could be used against him at trial. None of the Maryland cases relied upon involved circumstances like these."

307 Md. at 584–585, 515 A.2d at 1173–1174.

Observing that previous Maryland decisions that held that inducements by the State were "improper" did not involve inducements that occurred during a plea negotiation, the Court held, "[i]t would be anomalous. . . . to hold that the State's actions were 'improper' when they are expressly authorized by law (*i.e.,* Rule 4–243) and when the State neither rescinds nor breaches the plea bargain agreement." 307 Md. at 585, 515 A.2d at 1174.

---

police showing defendant a letter from convict displaying convict's regret at not confessing when he had the opportunity).

Although the Court recognized that "defendants would be reluctant to enter plea bargaining agreements if the State could thereafter rescind or breach the agreements, and then use at trial the defendant's inculpatory statement made as part of the agreement," 307 Md. at 586, 515 A.2d at 1174–1175, it also saw that Coley's plea contained an agreement that provided for such statements to be admitted at trial in the event of breach and that "the State neither rescinded nor breached the agreement." 307 Md. at 586, 515 A.2d at 1174–1175.

Concerned that defendants would thereby be encouraged to rescind plea agreements without justification, we declined to extend *Hillard* to the Coley situation, where the defendant breaches a plea agreement with a provision for the use against the defendant of any inculpatory statement by the State and the State neither breaches nor rescinds the plea agreement. We concluded that when plea agreements contain a clause that provides for statements made during plea negotiations to be used at trial in the event of a breach by the defendant and the State neither rescinds nor breaches the agreement, such statements are admissible at trial. 307 Md. at 585–587, 515 A.2d at 1175.

In *Allgood v. State*, the Court held that, where the State repudiates a plea agreement, inculpatory statements made by the defendant to a grand jury pursuant to that plea agreement are not admissible at trial. Allgood was arrested and charged with, inter alia, first degree murder and robbery with a deadly weapon. He entered into a plea agreement with the State, pursuant to which, in exchange for his truthful testimony and full disclosure of what he knew of the murder, the state would pursue only the manslaughter charge against him and agree to a probationary, rather than a prison, sentence.[6] After accept-

---

6. The plea agreement stated the following:

"The Defendant, George Allgood, in case # 18335307–11, agrees to testify truthfully before the Grand Jury and in all criminal proceedings against those suspected and or charged with the murder of Mr. Marion Harris on or about November 16, 1983, in Baltimore City. In addition

ing the plea and providing the State with information pursuant to it, the State, suspicious and concerned that Allgood was not being completely forthcoming, demanded that he take a polygraph test. When Allgood subsequently took the polygraph test and failed, the State, deeming the plea agreement to have been breached by Allgood, 309 Md. at 64, 522 A.2d at 920, wrote a letter to Allgood's attorney "to officially notify you that there is *no* plea agreement concerning this murder case between the State and your client, George Allgood." (Emphasis in original). *Id.* Further, the letter advised:

"The [State]. . . . had discussed a plea agreement with you concerning this case which was predicated upon your client successfully passing a polygraph examination administered by Corporal Sheldon of the Maryland State Police. As you are aware, on July 3, 1984, your client took a polygraph examination and Corporal Sheldon found that your client's answers indicated deception . . . Accordingly, your client's failure to pass the polygraph examination is a material breach of any plea agreement and renders such agreement null and void. The State intends to call for trial this case as well as the case of the co-Defendant, Michael Walker, on Indictment Nos. 18417201–03 on September 11, 1983 in Part 3. Furthermore, the State intends to take the steps necessary to have George Allgood returned from the Navy to the

to testifying truthfully as stated heretofore, George Allgood also agrees to testify to everything he remembers or should reasonably remember regarding the murder of Mr. Marion Harris. George Allgood also agrees to reveal to the State's Attorney Office of Baltimore City, prior to any sworn testimony the truth concerning the murder of Mr. Marion Harris leaving nothing out that he reasonably should remember.

"The State's Attorney's Office for Baltimore City, as considerations for the above, agrees to proceed against George Allgood only on the charge of manslaughter. This office also agrees to a suspended sentence along with a probationary period in lieu of any sentence involving actual incarceration after he enters a guilty plea to manslaughter in the case involving the death of Mr. Marion Harris. Further, this office will recommend the release of George Allgood from jail to the U.S. Navy on June 11, 1984. Finally, this office will write a letter to the U.S. Navy citing George Allgood's cooperation in pursuing the conviction of those responsible for the murder of Mr. Marion Harris."
309 Md. at 58, 522 A.2d at 917.

Baltimore City Jail pending the trial on September 11, 1984."

*Id.*

Allgood denied breaching the agreement.[7] He moved, on the contrary, to enforce the plea agreement. That motion was denied, and he was convicted.

Comparing Coley's situation to Allgood's, this Court found that, "[t]he decisive difference between Coley's situation and that of Allgood is that the defendant reneged on the agreement in the former but the State terminated the agreement in the latter. In Coley's case, 'the State neither rescinded nor breached the agreement.'" 309 Md. at 77, 522 A.2d at 926, *citing Wright,* 307 Md. at 586, 515 A.2d at 1174. In *Allgood,* the State flatly rescinded the agreement in a letter to defense counsel, and thereafter refused to submit the plea agreement to the trial court. The State proceeded to try Allgood, using his inculpatory statements against him, despite his desire to plead pursuant to the agreement.

The *Allgood* court acknowledged that the Coley plea agreement contained a provision the Allgood plea did not, it "specified that if Coley reneged, his inculpatory statements could be used against him at trial." 309 Md. at 77, 522 A.2d at 926,

---

7. There was a dispute, which the trial court resolved, as to whether the failure of the polygraph test, the proffered basis by the State, was a part of the plea agreement. 309 Md. at 68–70, 522 A.2d at 921–923. The State argued that "the purpose of the polygraph was to determine whether [Allgood] was lying or not, and the purpose of determining whether he was lying or not was to determine whether we were bound by the agreement." 309 Md. at 67–68, 522 A.2d at 921. Allgood maintained that it was not, that the polygraph test was not part of the plea agreement, and that its results did not play any role in determining whether or not Allgood's plea agreement was valid or invalid. 309 Md. at 68, 522 A.2d at 922. He submitted that he agreed to the test so that he could be transferred to the Navy and out of city lockup and that he understood the polygraph only to relate that request. [cite] The trial court found that there was a plea agreement prior to its withdrawal by the State, that the polygraph test was part of the agreement, and that the parties were to be guided by the results. 309 Md. at 70–71, 522 A.2d at 923. We determined that the trial court's findings in that regard were not clearly erroneous. 309 Md. at 72, 522 A.2d at 923–924.

*citing Wright,* 307 Md. at 585, 515 A.2d 1157.   Nevertheless, we determined the teachings of *Wright* to be:

"1) When statements are obtained from a defendant upon promises made him by the State by way of a plea bargain agreement, the statements, in the light of Rule 4–243, are not inadmissible *per se,* under the inducement doctrine, in the State's case in chief at trial on the merits.

"2) When the State rescinds, repudiates, or breaches the plea bargain agreement, for whatever reason, after the statements are so obtained, the statements, as a matter of law, are inadmissible *per se* in the State's case in chief at trial on the merits."

309 Md. at 78, 522 A.2d at 926–27.   We explained how we arrived at that distillation:

"*Wright* fully appreciated that promises to the defendant of the nature usually encompassed in plea bargain agreements certainly suffice to induce a statement obtained, so that, ordinarily, the inducement most assuredly would be improper.   The intervention of a plea bargain agreement, however, expressly authorized by law, serves to make the inducement proper.   Thus, the plea agreement, in itself, does not render the statement inadmissible.   On the other hand, *Wright* recognized the chilling effect on plea bargaining were the State permitted to enter into a plea agreement, obtain a statement thereunder, abort the agreement, and then use the statement in its case in chief at trial on the merits.   The reason for the State's repudiation of the agreement is immaterial with respect to the admissibility of the statement.   Whether its reason be sound or unsound, technical or substantial, in good faith or simply because the prosecutor had misgivings or a change of heart, or was utterly arbitrary, is of no matter.   The justification *vel non* of the rescission, repudiation, or breach of the agreement by the State goes to whether the defendant is entitled to have the agreement enforced;   it does not affect the admissibility of

the statement obtained under it. This is in accord with the rationale of *Wright.*"

*Id.* at 78–79, 522 A.2d at 927.

### C.

■■■ Like the Court of Special Appeals, we are unpersuaded that, by including in the plea agreement a clause, like that inserted in the Coley plea agreement, permitting the State to use any inculpatory statements made by the respondent should he breach the agreement, the respondent's inculpatory statements are rendered admissible notwithstanding the State's rescission of the plea agreement. That clause, in other words, is not dispositive. It is *Allgood*'s analysis of *Wright,* reconciling the two situations those cases presented, makes that quite clear. As indicated, *Allgood* interprets *Wright* as making clear that when the State rescinds a plea agreement for any reason, the obtained statements are rendered inadmissible *per se.* 152 Md.App. at 459, 832 A.2d at 277. Again, as already seen, it explained clearly its basis for that conclusion:

> "The *reason* for the State's repudiation of the agreement is immaterial with respect to the admissibility of the statement. Whether its reason be sound or unsound, technical or substantial, in good faith or simply because the prosecutor had misgivings or a change of heart, or was utterly arbitrary, is of no matter. The justification *vel non* of the rescission, repudiation, or breach of the agreement by the State goes to whether the defendant is entitled to have the agreement enforced; it does not affect the admissibility of the statement obtained under it. This is in accord with the rationale of *Wright.*"

309 Md. at 79, 522 A.2d at 927 (emphasis added).

*Wright* controls the situation in which a defendant breaches a plea agreement containing a provision burdening that defendant's breach with the admissibility of the inculpatory statements he or she made pursuant to the plea agreement, and there has been *no* breach or rescission by the State: the plea

is rendered invalid in favor of the State, the admissibility clause is triggered, and as a result, the defendant's statements are admissible. *Allgood* controls, however, where the State *does* breach or rescind the plea agreement, even though the defendant's breach of the agreement may have caused or justified the State's rescission and even though the defendant's breach would have permitted the admission of his or her inculpatory statements: the defendant's statements are inadmissible, the plea agreement having been being rendered invalid by virtue of the rescission.

Neither *Allgood* nor *Wright* is compromised by this decision. If there has been no breach or rescission by the State, the defendant's statements, under the express provision, are admitted, consistent with *Wright.* If the State repudiates, rescinds, or breaches for any reason, including because it believed, in good faith, that the defendant had breached *first,* the statements are inadmissible to protect the defendant's Fifth Amendment interests ("*Wright* recognized the chilling effect on plea bargaining were the State permitted to enter into a plea agreement, obtain a statement thereunder, abort the agreement, and then use the statement in its case in chief on the merits"). 309 Md. at 79, 522 A.2d at 927.

### D.

The State relies on two cases, *People v. Saunders,* 135 Ill.App.3d 594, 90 Ill.Dec. 378, 482 N.E.2d 85 (1985) and *McGowan v. State,* 706 So.2d 231 (Miss.1997), as persuasive authority, as, it proffers, they demonstrate how other courts, in analyzing cases where the defendant, as part of the plea agreement, agreed to the admissibility of his or her inculpatory statements in the event of the defendant's breach, they focused primarily on the element of breach. We are not persuaded that these cases support using breach as the dispositive element in determining the admissibility of statements made during or pursuant to a plea agreement. On the contrary, they provide support for considering rescission as the dispositive factor.

In *Saunders*, a negotiated plea agreement provided that the defendant, Saunders, would give a complete statement to the authorities regarding the murder with which he was charged, in exchange for which, the State promised favorable pretrial release and sentencing considerations. 482 N.E.2d at 88. Prior to trial, he moved to suppress statements made during plea negotiations with the State, alleging that his prior trial testimony against a co-defendant and statements made to the prosecutor "were violative of Supreme Court Rule 402(f) [8] and principles of due process and voluntariness," as they were induced by promises of leniency by the State, which were not fulfilled. *Id.* at 87. It was disputed whether Saunders had fully cooperated, the defendant alleging that he had and the State maintaining that he had not, as required by the plea agreement, given a complete statement prior to the arrest of his co-defendants. Saunders's motion was denied and he was convicted. 482 N.E.2d at 89.

On appeal, the Illinois Appellate Court concluded that Supreme Court Rule 402(f) was not applicable in the matter of the admissibility of the defendant's prior testimony and statement to the prosecutor. It explained:

"This is not a situation where the agreement has been withdrawn or unaccepted by the court, but is rather a situation where the defendant himself was in breach of the agreement. Being in this position, the defendant cannot complain about the State's failure to live up to its end of the bargain. Further, the defendant's testimony, although made after and pursuant to the agreement, was not made while he was negotiating over the disposition of his case. Thus, the purpose of the rule, i.e., to 'encourage the negoti-

---

8. Illinois Supreme Court Rule 402(f) provides:
"If a plea discussion does not result in a plea of guilty, or if a plea of guilty is not accepted or is withdrawn, or if judgment on a plea of guilty is reversed on direct or collateral review, neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal proceeding."

ated disposition criminal cases,' would not be served by rendering the statements inadmissible."

482 N.E.2d at 94.

In reaching this conclusion, the court relied on, adopting the rationale of, *United States v. Stirling,* 571 F.2d 708 (2d Cir.1978), *cert. denied* 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d. 116 (1978) and *United States v. Davis,* 617 F.2d 677 (D.C.Cir. 1979). *Saunders,* 482 N.E.2d at 94. In *Stirling,* the defendant failed to plead guilty, thus violating the terms of a plea agreement. The court opined on that violation and its consequence, as follows:

> "All [the defendant] had to do was live up to his end of the bargain. His failure to do so justly exposed him to prosecutorial use of his Grand Jury testimony.... It may be true that [the defendant] would not have testified before the Grand Jury had it not been for the plea agreement.... [The defendant] voluntarily negotiated his plea agreement ... and voluntarily decided to violate his plea agreement. He could have relied on the agreement to protect himself.... His breach of the agreement removed that protection."

571 F.2d at 732–733. Addressing the plea agreement violations by the defendants in that case, the *Davis* court observed:

> "Excluding testimony made after—and pursuant to—the agreement would not serve the purpose of encouraging compromise ... such a rule would permit a defendant to breach his bargain with impunity: he could renounce the agreement and return to the status quo ante whenever he chose...."

*Id.* at 685. The *Saunders* court took note, and emphasized, that the breach by the defendants in *Stirling* and *Davis* negated any failure of compliance on the State's part. 482 N.E.2d at 95.

The State in this case also relies on *McGowan v. State, supra,* a robbery conspiracy and murder case, that also relies on the rationale of both *Stirling* and *Davis.* 706 So.2d at 239–241. There, the defendant entered into a plea agreement

pursuant to which, in exchange for his cooperation and testimony against the other robbers at any subsequent trial, he was allowed to plead guilty and receive a recommended lighter sentence, thus avoiding a possible capital sentence. 706 So.2d at 233. When, however, the defendant breached the plea agreement by refusing to testify against a co-conspirator, his guilty plea was vacated, the original charges were reinstated and he was tried and, with the use of the statements he made during plea negotiations, convicted of capital murder. 706 So.2d at 233–234. Before trial, the defendant moved to suppress the statements he gave after his guilty plea. The trial court denied that motion and the Supreme Court of Mississippi affirmed that ruling. 706 So.2d 231. In so doing, it opined, "even though [the defendant's] agreement did not include language that information obtained could later be used, it appears fundamentally fair that such statements given after the plea agreement be admissible." 706 So.2d at 241. Accordingly, the court "adopt[ed] the view that where a defendant willfully breaches a plea bargain agreement, statements made by the defendant after a valid plea agreement has been entered be admissible at the later trial of the defendant if voluntarily made." *Id.*

Neither *Saunders* nor *McGowan* is persuasive. First, their basic premise and approach is directly contrary to this Court's precedents. While we have recognized that a rescission of a plea agreement by the State has consequences, *Allgood*, 309 Md. at 78–79, 522 A.2d at 927, they, both cases, focus only on the defendant's breach, and, in that context, emphasizing the need to disadvantage the defendant as a result of that breach, excuses the State's failure to comply with its obligations under the agreement. *Saunders*, 482 N.E.2d at 93–94, *citing Stirling*, 571 F.2d at 732–733, *Davis*, 617 F.2d at 685. Moreover, this Court has specifically and clearly prescribed the disadvantage that a defendant will suffer should he or she breach his or her plea agreement: he or she loses the "entitlement to have the plea agreement enforced," *Allgood*, 309 Md. at 74, 522 A.2d at 924, and, if the plea agreement so provides, and the State has not breached or rescinded the agreement, his or

her statements made pursuant to or during the plea agreement or negotiations may be used by the State at trial in its case in chief. *Id.* at 77, 522 A.2d at 926; *Wright,* 307 Md. at 586, 515 A.2d at 1174–1175. We have also clearly prescribed the effect of the State's rescission, repudiation or breach, for whatever reason, of a plea agreement after the defendant has made statements pursuant to the agreement: the statements are inadmissible in the State's case in chief. *Allgood,* 309 Md. at 78, 522 A.2d at 927. Again, "[t]he justification *vel non* of the rescission, repudiation, or breach of the agreement by the State goes to whether the defendant is entitled to have the agreement enforced; it does not affect the admissibility of the statement obtained under it." *Id.* at 79, 522 A.2d at 927.

The effect of *Allgood* and *Wright* is to ensure that neither the defendant nor the State benefits from breaching the plea agreement. A defendant who breaches a plea agreement loses his or her entitlement to enforce the agreement and, if the agreement so provides and the State has not also breached, rescinded, or repudiated the agreement may have any plea related statements used against him or her at trial. On the other hand, where the State breaches, rescinds or repudiates the agreement, it will lose the benefit of the defendant's inculpatory statements. Where both breach, the parties are returned to square one, the status quo ante.[9] We do not share the State's concern that, under the *Allgood* approach, defendants will be motivated to "breach with impunity" in order to compel the State to rescind the agreement. It is difficult to see what a defendant would gain from doing so. More to the point, aware of the ground rules, it is difficult to imagine that the State would fall prey to such a ploy.

### E.

Finally, the State argues that even if the admissibility of the statements made by a defendant pursuant to a plea agreement

---

9. The courts in *People v. Saunders,* 135 Ill.App.3d 594, 90 Ill.Dec. 378, 482 N.E.2d 85 (1985) and *United States v. Davis,* 617 F.2d 677 (D.C.Cir. 1979) find the idea of defendant's "breach[ing] with impunity" to be returned to the status quo ante to be appalling, thus, improper result.

turns on whether the State rescinded the agreement, the statements may nevertheless be admissible, if the defendant waives their inadmissibility. Relying on *United States v. Mezzanatto*, 513 U.S. 196, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995), the State maintains that the respondent, by agreeing to the admissibility of any inculpatory statements he might make in the course of plea negotiations or pursuant to the plea, waived any right he had to suppress his inculpatory statements and that he should be held to the terms of the agreement.

In *Mezzanatto*, the defendant was charged with possession of methamphetamine with the intent to distribute. Before trial, he and his attorney met with the prosecutor to discuss the possibility of cooperating with the Government. As a condition for the meeting, the prosecutor required the defendant "to agree that any statements he made during the meeting could be used to impeach any contradictory testimony he might give at trial if the case proceeded that far." 513 U.S. at 198, 115 S.Ct. at 800, 130 L.Ed.2d at 702. After conferring with his counsel, the defendant agreed to so proceed. *Id.* When the defendant's statements were determined to be inconsistent with the surveillance evidence the Government had amassed, the prosecutor terminated the meeting. *Id.* at 199, 115 S.Ct. at 800, 130 L.Ed.2d at 703. The prosecutor cross-examined the defendant at his trial, over his objection, using the statements he made during the plea discussion meeting and, when the defendant denied having made certain statements, called an agent to impeach him. *Id.* at 199, 115 S.Ct. at 800–801, 130 L.Ed.2d at 703. His conviction having been reversed, the Ninth Circuit Court of Appeals holding that in creating the exclusionary provisions of Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(e)(6), Congress intended to preclude waiver agreements, *United States v. Mezzanatto*, 998 F.2d 1452, 1454–1456 (9th Cir.1993), the Supreme Court issued the writ of certiorari to review that decision. Reversing, the Court held, "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the ex-

clusionary provisions of the plea-statement Rules is valid and enforceable." 513 U.S. at 210, 115 S.Ct. at 806, 130 L.Ed.2d at 710.

It is evident that *Mezzanatto* is inapposite. In this case, rather than for impeachment purposes, the statements in this case were introduced and admitted in the State's case in chief. The Supreme Court in *Mezzanatto*, as elucidated by the three concurring justices,[10] 513 U.S. at 211, 115 S.Ct. at 806, 130 L.Ed.2d at 710, determined that waiver applied to plea statements only for purposes of impeachment. They expressed doubt as to the enforceability of waiver where the prosecution wished to use the plea statements in its case-in-chief, as the State does here, stating that, "to use such statements in the case-in-chief would more severely undermine a defendant's incentive to negotiate, and thereby inhibit plea bargaining." 513 U.S. at 211, 115 S.Ct. at 806, 130 L.Ed.2d at 710 (Ginsberg, J., concurring).

Moreover, applying *Mezzanatto* to hold that any knowing and voluntary waiver of the exclusionary provisions of Maryland Rule of Evidence 5–410 is valid and enforceable would undermine both *Wright* and *Allgood,* rendering the question of whether the State rescinded or breached the plea agreement irrelevant.

JUDGMENT AFFIRMED, WITH COSTS.

Judge CATHELL joins in the result only.

---

**10.** Two other Justices, Souter and Stevens dissented and, thus, would have not have permitted waiver even for impeachment. *United States v. Mezzanatto,* 513 U.S. 196, 211, 115 S.Ct. 797, 806, 130 L.Ed.2d 697, 710–711 (1995), Souter, J., dissenting.